**FILED**

**FEBRUARY 8, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**08 C 828**

| | |
|---|---|
| THOMAS P. CLIFFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. |
| | ) |
| PATTERSON COMPANIES, INC., and | ) |
| PATTERSON MEDICAL SUPPLY, INC., | ) |
| | ) |
| Defendants. | ) |

**JUDGE LEFKOW**
**MAGISTRATE JUDGE MASON**

### COMPLAINT

Plaintiff, THOMAS P. CLIFFORD, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., complains of Defendants, PATTERSON COMPANIES, INC., and PATTERSON MEDICAL SUPPLY, INC., as follows:

### Nature of Case

1.      Plaintiff brings this action against Defendants to recover damages proximately caused by Defendants' discriminatory and retaliatory acts in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

### Jurisdiction and Venue

2.      This Court has original jurisdiction over Plaintiff's ADEA and Title VII claims under Section 7(b) of the ADEA, Section 5(f) of Title VII, 29 U.S.C. § 626(b), and 29 U.S.C. § 1337.

Complaint.Final.wpd
February 8, 2008/tjc

3.    Venue is proper in this Court in that Defendants' illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

4.    On July 27, 2006, Plaintiff, Thomas P. Clifford (hereafter "Thomas"), filed timely charges of illegal retaliation and age discrimination against Defendants (Charge No. 440-2006-07217), with the local district office of the EEOC.  On June 19, 2007, Thomas filed a timely amendment to Charge No. 440-2006-07217 with the EEOC, alleging additional acts of discrimination and retaliation by Defendants.

5.    On December 13, 2007, the EEOC issued its Notice of Right to Sue in connection with Thomas' amended Charge No. 440-2006-07217.  Thomas has filed this Complaint within 90 days of his receipt of the EEOC Right to Sue Notice.

**The Parties**

6.    Thomas is a 64 year-old individual (DOB: August 27, 1943) residing at all relevant times in Marlton, New Jersey.

7.    Defendant Patterson Companies, Inc. (hereafter "Patterson"), is a Minnesota corporation doing business in Illinois through its wholly-owned subsidiary Defendant Patterson Medical Supply, Inc. (hereafter "Patterson Medical"), and operating within the geographical boundaries of this Court's jurisdiction out of a facility in Bolingbrook, Illinois, where its illegal activities described below took place.

8.    Defendant Patterson Medical, is a Minnesota corporation registered and licensed to conduct business in Illinois and doing business in Illinois within the geographical boundaries of this Court's jurisdiction out of a facility in Bolingbrook, Illinois, where its illegal activities described below took place.

9.     Defendants Patterson and Patterson Medical (hereafter jointly referred to as "Patterson" or "Defendants") are corporations engaged in an industry affecting commerce who each had twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  Defendants are thus "employers" within the meaning of the ADEA and Title VII.

**Facts Common to all Counts**

10.     In February 1997, Thomas began employment with Sammons Preston, Inc., in the position of Regional Sales Manager.

11.     On or about September 2003, Patterson purchased Sammons Preston, Inc. Thereafter, Thomas became an employee of Patterson.

12.     In his position as Regional Sales manager for Patterson, Thomas' work performance was at all times above average to excellent.  He received annual merit increases in pay as well as various bonuses and sales awards.

13.     In April 2002, Thomas was promoted to the position of  Vice President, US Sales.  His annual salary was increased, his car allowance was increased, and his potential commissions were also greatly increased.

14.     In 2003 and 2004 Thomas continued his excellent  work for Defendants, and was rewarded with merit salary increases, as well as bonuses and sales awards.

15.     Toward the end of 2004, Defendants hired Len Tenzer into the position of Senior Vice President, Sales.  Thomas thereafter reported to Mr. Tenzer.

16.    Mr. Tenzer immediately began to make ageist comments about other employees to Thomas including, but not limited to, "he is really old," "I need someone young in this position," and you have to get someone who is young and attractive and we will teach them to sell.

17.    Mr. Tenzer also later began to make various ageist remarks and comments to Thomas about Thomas including, but not limited to, repeatedly asking Thomas how old he was, stating he could not believe Thomas was that old, stating that he assumed Thomas was winding down and was thinking of retirement, stating that Thomas should have enough money to retire, and asking him why he was still working.

18.    Due primarily to Mr. Tenzer's age bias and repetitive ageist remarks, Thomas requested a transfer from then Patterson Medical CEO Ed Donnelly. In January 2005, CEO Donnelly granted Thomas' request, and Thomas' title was changed to Vice President, Business Development. In this position, he had very little direct contact with Mr. Tenzer.

19.    In or around October 2005, Mr. Donnelly left his CEO position. Patterson filled the vacant Patterson Medical CEO position with then Patterson Dental Vice President of Sales Dave Sproat. Concurrent therewith, Thomas was again assigned to report to Mr. Tenzer.

20.    Also in October 2005, Thomas attended a trade show, MedTrade. New CEO Dave Sproat, other employees of Patterson, as well as numerous Patterson vendors and customers also attended MedTrade. At this trade show, Thomas observed Mr. Sproat drink excessive amounts of alcohol, and heard him make sexist comments, including but not limited to, his statement that the Patterson culture was "work hard, play hard and chase pussy." Thomas also received various complaints about Mr. Sproat's behavior at

MedTrade from both Patterson customers and employees.

21.    The following day, while still at MedTrade, Thomas notified Mr. Tenzer of Mr. Sproat's drunk and sexually harassing behavior as well as the complaints he had received from Patterson customers and employees about Mr. Sproat.

22.    In early January 2006, Thomas again received complaints from several Patterson regional managers about Mr. Sproat's behavior at a three-day training meeting held in Chicago, Illinois.  These complaints included, but were not limited to, Mr. Sproat drinking excessive amounts of alcohol, being so drunk on two of the evenings that he had to be helped from the bar at closing time, openly groping one or more female employees, following another female employee inside the restroom, being among a group of people who broke into the gift shop to steal beer, failing to show up at work meetings on two mornings until after 11:00 a.m.,  making sexist comments such as the very same "work hard, play hard and chase pussy" statement, stating that he was married but had a girlfriend in Texas, and stating that he wanted it understood that there would not be many women moving into management at Patterson Medical.

23.    Thomas again immediately notified Mr. Tenzer about the complaints he received regarding Mr. Sproat's drunk and sexually harassing behavior at the January 2006 training meeting.

24.    In mid-January, Thomas again spoke with Tenzer concerning the complaints he received regarding Mr. Sproat's drunk and sexually harassing behavior at the early January  training meeting.

25.    On or about January 17, 2005, Thomas submitted an anonymous complaint about Mr. Sproat's drunk and sexually harassing behavior at the trade show and training meeting in writing to several of Patterson's top management personnel.

26.    About a month later, Thomas asked Mr. Tenzer what was going on with the Dave Sproat harassment issues and investigation. Mr. Tenzer told Thomas that he and HR investigated Thomas' complaints about Mr. Sproat, and determined that the people who reported seeing and hearing allegedly inappropriate behavior lied because of their loyalty to former CEO Donnelly. Mr. Tenzer implied that Thomas was the instigator of such lies, and that Thomas had also been untruthful because of his loyalty to Donnelly.

27.    In late March 2006, Mr. Tenzer demoted Thomas to the position of National Accounts Director effective May 1, 2006. Concurrent therewith, Thomas' annual salary was decreased by $15,000, and he was placed into a much less generous commissions program.

28.    Thereafter, and throughout the Summer of 2006, Mr. Tenzer issued Thomas numerous false and unfounded discipline and performance warnings, including numerous threats that he would terminate Thomas' employment. Moreover, in many instances Mr. Tenzer held Thomas to higher performance standards than he applied to other similarly situated employees, and generally treated such similar employees more favorably than he treated Thomas.

29.    On July 17, 2006, Thomas complained to Patterson Medical HR Director Mary Jean Schlueter about Mr. Tenzer's treatment of him and behavior including, but not limited to, his numerous ageist comments about Thomas and other employees, his March 2006 demotion of Thomas, his several instances of false and unfounded discipline and

performance warnings, his more favorable treatment of his peers, and what Thomas believed to be his failure to investigate Thomas' complaints about Mr. Sproat's drunk and sexually harassing behavior.

30.     Thomas also told Ms. Schlueter that he authored the January 2006 anonymous complaint regarding Mr. Sproat's behavior at the trade show and training meeting.

31.     Thomas also told Ms. Schlueter that he believed Mr. Tenzer was taking these actions against him because of his age and/or as retaliation because Thomas complained about Mr. Sproat's behavior.

32.     Following Thomas' complaints to Ms. Schlueter, Mr. Tenzer continued to falsely criticize Thomas' work performance, to hold him to higher standards of performance than other similarly situated employees, to threaten him with termination, and to otherwise discriminate and retaliate against him.

33.     On August 23, 2006, Ms. Schlueter wrote to Thomas advising him that she determined his complaints were either unsubstantiated, and/or, in the case Thomas' January 2006 complaints, that action had already been taken.

34.     By September 15, 2006, Mr. Tenzer's continued discriminatory and retaliatory actions against Thomas, combined with Patterson's decision to take no remedial action in response to Thomas' complaint, resulted in his working conditions being so intolerable that he was forced to resign from his employment with Patterson.

35.     At all relevant times, Thomas' work performance met or exceeded Patterson's legitimate expectations.

36.     Following the termination of his Patterson employment, Patterson continued to discriminate and/or retaliate against Thomas by taking adverse action against him including, but not limited to, falsely alleging that he had various continuing legal obligations to Patterson, and that he may have breached one or more of these phantom obligations.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE ADEA

37.     Thomas realleges and reaffirms the allegations of paragraphs 1 through 36, above, and sets them forth as paragraph 37 of Count I, *in haec verba*.

38.     It is unlawful under the ADEA for an employer such as Patterson to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or, to limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.
See 29 U.S.C. § 623(a).

39.     Patterson's discriminatory and/or retaliatory behavior as described above, coupled with its refusal to take any remedial action, made Thomas' working conditions so intolerable that a reasonable person would have been compelled to resign.

40.     Here, Patterson committed various adverse and damaging acts and/or engaged in various adverse conduct towards Thomas including, but not limited to, the adverse actions described above, and the constructive termination his employment in September 2006, because of his age in violation of the ADEA.

41.     As a direct and proximate result of Patterson's illegal conduct as described above, Thomas has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42.     Patterson knew that its discriminatory acts were prohibited by the ADEA, or acted with reckless disregard to that possibility.

Wherefore, Plaintiff, THOMAS P. CLIFFORD, respectfully prays unto this Honorable Court to enter judgment against Patterson as follows:

A.     Order Patterson to make Thomas whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B.     Order Patterson to pay Thomas an equal amount to A., above, as and for liquidated damages under the ADEA;

C.     Order Patterson to immediately reinstate Thomas to his former position; or, in the alternative, order Patterson to pay Thomas an appropriate amount of front pay;

D.     Order Patterson to pay Thomas compensatory damages in the maximum amount allowable under the law;

E.     Order Patterson to pay Thomas' costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

F.     Try all issues of fact to a jury; and,

G.     Grant such other relief as the Court deems just.

## COUNT II: RETALIATION IN VIOLATION OF THE ADEA

43.    Thomas realleges and reaffirms the allegations of paragraphs 1 through 36, above, and sets them forth as paragraph 43 of Count II, *in haec verba*.

44.    It is unlawful under the ADEA for an employer such as Patterson to discriminate against any employee because such employee has opposed any practice made unlawful by the ADEA, or because such employee has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under the ADEA.  See 29 U.S.C. § 623(d).

45.    Thomas at all relevant times in good faith believed that the ageist practices and acts of Mr. Tenzer that he complained about in July 2006 as described above violated the law.

46.    Thomas' age discrimination and retaliation complaints as described above, individually and collectively constitute protected activity under the ADEA.  See 29 U.S.C. § 623(d).

47.    Patterson was aware of Thomas' protected activities and took retaliatory adverse actions against him including, but not limited to, those described above, because of such protected activities in  violation of  Section 623(d) of the ADEA.

48.    Patterson's discriminatory and/or retaliatory behavior as described above, coupled with its refusal to take any remedial action, made Thomas' working conditions so intolerable that a reasonable person would have been compelled to resign.

49.    As a direct and proximate result of the Patterson's illegal retaliation as described above, Thomas has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

50.    Patterson knew that its retaliatory acts were prohibited by the ADEA, or acted with reckless disregard to that possibility.

Wherefore, Plaintiff, THOMAS P. CLIFFORD, respectfully prays unto this Honorable Court to enter judgment against Patterson as follows:

A.    Order Patterson to make Thomas whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B.    Order Patterson to pay Thomas an equal amount to A., above, as and for liquidated damages under the ADEA;

C.    Order Patterson to immediately reinstate Thomas to his former position; or, in the alternative, order Patterson to pay Thomas an appropriate amount of front pay;

D.    Order Patterson to pay Thomas compensatory damages in the maximum amount allowable under the law;

E.    Order Patterson to pay Thomas' costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

F.    Try all issues of fact to a jury; and,

G.    Grant such other relief as the Court deems just.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

51.    Thomas realleges and reaffirms the allegations of paragraphs 1 through 36, above,  and sets them forth as paragraph 51 of Count III, *in haec verba*.

52.    It is unlawful under Title VII for an employer such as Patterson to discriminate against Thomas because Thomas opposed any practice made an unlawful employment practice by Title VII.  See 42 U.S.C. § 2000e-3(a).

53.    Thomas at all relevant times in good faith believed that the practices and acts of Mr. Sproat that he complained about in October 2005, January 2006, and again July 2006 as described above were illegal sex discrimination and/or harassment in violation of Title VII.

54.    Thomas' sex discrimination and harassment complaints as described above, individually and collectively constitute protected activity under Title VII.

55.    Patterson was aware of Thomas' protected activities and took retaliatory adverse actions against him including, but not limited to, those described above, because of such protected activities in  violation of Title VII.

56.    Patterson's discriminatory and/or retaliatory behavior as described above, coupled with its refusal to take any remedial action, made Thomas' working conditions so intolerable that a reasonable person would have been compelled to resign.

57.    Patterson knew that its retaliatory acts were prohibited by Title VII, or acted with reckless disregard to that possibility.

Wherefore, Plaintiff, THOMAS P. CLIFFORD, respectfully prays unto this Honorable Court to enter judgment against Defendant Patterson as follows:

A.    Order Patterson to make Thomas whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

C.    Order Patterson to immediately reinstate Thomas to his former position; or, in the alternative, order Patterson to pay Thomas an appropriate amount of front pay;

D.    Order Patterson to pay Thomas compensatory damages in the maximum amount allowable under the law;

E.    Order Patterson to pay Thomas punitive damages in the maximum amount allowable under the law;

F.    Order Patterson to pay Thomas' costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

G.    Try all issues of fact to a jury; and,

H.    Grant such other relief as the Court deems just.

Respectfully submitted,
Plaintiff, THOMAS P. CLIFFORD,


By:    ____/s/ Timothy J. Coffey_____
Timothy J. Coffey, Esq.
THE COFFEY LAW OFFICE, P.C.
Attorneys for THOMAS P. CLIFFORD
1403 E. Forest Avenue
Wheaton, IL  60187
(630) 534-6300